**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA,
                Government,

              17 CR. 461 (RMB)

   -against-

**DECISION & ORDER**

NAPOLEON GRIER,
                Defendant.
------------------------------------------------------------X

## I. Background

In an Indictment, dated July 28, 2017, a Southern District of New York grand jury charged Defendant Napoleon Grier ("Defendant") with conspiracy to commit wire fraud (and substantive wire fraud) in violation of 18 U.S.C. §§ 1342 and 1349.[1] (*See* Superseding Indictment, dated July 28, 2017.)  Defendant Grier is a U.S. citizen who was living in the Netherlands when he was arrested and detained on August 12, 2019.  (*See* PSR at 1.)  He was extradited to the United States on October 6, 2021 and has remained in U.S. custody for approximately 28 months.  (*Id.*)  Defendant wishes "to return to the Netherlands where [he] had established residency" and where his fiancée resides, (Def.'s Mot. to Withdraw Guilty Plea, dated Nov. 21, 2022 ("Def.'s Mot."), at 4), although he is concerned about whether "officials in the Netherlands would permit a US citizen to re-enter their country . . . having been convicted of a felony."  (*Id.* at 14.)

---

[1] Defendant and his co-conspirators promised financing resources to multiple victims. (*See* Superseding Indictment, dated July 28, 2017.)  After they collected initial deposits from the victims, Defendant and his alleged co-conspirator(s) kept the deposits and "never provided any of the financing they promised to victims." (Presentence Investigation Report, dated June 8, 2022 ("PSR"), at 6.)  This "Advance Fee Scheme," which spanned from at least April 2010 through August 2012, is said to have defrauded victims "of at least $2,275,000." (*Id.* at 5.)

### Defendant's Plea Agreement

On March 21, 2022, Defendant, who was represented by private counsel, Jacqueline Arango, Esq., executed a plea agreement with the Government. (*See* Plea Agreement, dated Feb. 1, 2022 ("Plea Agreement"), at 2.) The Plea Agreement provides, among other things, that Defendant engaged with others in a conspiracy to commit wire fraud under 18 U.S.C. § 1349, as set forth in Count One of the Superseding Indictment, (*id.* at 1); that Defendant's (stipulated) guidelines range was 33 to 41 months' imprisonment plus up to three years of supervised release, (*id.* at 1, 3); that Defendant is fully aware that his guilty plea and conviction might put him at risk of adverse immigration consequences, (*id.* at 4–5); but that "[t]he defendant affirms that he wants to plead guilty regardless of any immigration . . . consequences." (*Id.* at 5.) "**[T]he defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration . . . status**." (*Id.* (emphasis added).)[2]

### Defendant's Plea Allocution

Defendant pled guilty before Magistrate Judge James Cott on March 21, 2022. (*See* Hr'g Tr., dated March 21, 2022. ("3/21/22 Tr.").) At the plea allocution, Judge Cott confirmed with Defendant, among other things, that he was "pleading guilty because [he was] guilty" and "not for some other reason," (*id.* at 3:7–13); that he "had a full opportunity to discuss the case" and the plea with his attorney, defense counsel Arango, (*id.* at 6:5–10); that he was satisfied with Arango's representation of him, (*id.* at 6:2–4); and that Arango explained to him all of the terms and conditions of the Plea Agreement. (*Id.* at 11:11–13.)

---

[2] Defendant also agreed in the Plea Agreement that he "**will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences** . . . resulting from the guilty plea and conviction." (*Id.* (emphasis added).)

2

**Defendant's Motion to Withdraw Guilty Plea**

Grier's sentencing was scheduled for June 28, 2022. But it was not concluded on that date because a "factual dispute" arose over Defendant's restitution obligations. (*See* Hr'g Tr., dated June 28, 2022, at 26:4–9; 30:9–17.) The Court adjourned the sentencing (which had began) and requested written submissions from the parties to explain, among other things, why Defendant and his co-defendant, Anthony Gude, should "have different restitution amounts." (*Id.* at 30:18–19, 31:13–16.)

On August 30, 3022, defense counsel Arango moved to withdraw as counsel due to "a fundamental disagreement resulting in an irreconcilable conflict between counsel and client." (*See* Mot. to Withdraw as Counsel, dated Aug. 30, 2022, at 2.) On September 15, 2022, the Court granted Arango's motion and appointed CJA defense counsel, Matthew Myers, Esq., in her place, and the Court rescheduled the sentencing for November 2, 2022. (*See* Hr'g Tr., dated Sept. 15, 2022, at 4, 8.) On October 26, 2022, defense counsel Myers advised the Court that Defendant "wished to withdraw his plea." (Letter from Matthew Myers, Esq., dated Oct. 26, 2022.) And, on November 21, 2022, Defendant filed a motion to withdraw his plea arguing, among other things, that it "was not voluntarily, knowingly or intelligently made as it was based on ineffective assistance of counsel [Arango]." (Defs.' Mot., dated Nov. 21, 2022, at 7.)

Defendant contends in his motion, among other things, that he had "very little access" to discovery materials, (*id.* at 1), and that Arango informed him that he would face a 20-year sentence unless he pled guilty. (*Id.* at 2.) He also contends that Arango did not sufficiently review with him the Plea Agreement, the Presentence Investigation Report, and "potential defenses." (*Id.* at 2–3, 5, 8.) And, he contends that Arango incorrectly advised him that he "could return to the

3

Netherlands with a felony record while having the obligation of Post Release Supervision in the United States." (*Id.* at 8.)

Attorney Arango filed a Declaration, dated January 9, 2023, denying allegations of her ineffectiveness. (Decl. of Jacqueline Arango, Esq., dated Jan. 9, 2023 ("Arango Decl.").) Arango states, among other things, that she: (i) spoke with Defendant "on numerous occasions regarding the charges against him as set forth in the superseding indictment and complaint," (*id.* ¶ 3); (ii) "discussed potential defenses" and "gather[ed] information . . . to support [those] defenses," (*id.*); (iii) "had several telephone conferences with [Defendant] regarding th[e] plea offer," (*id.* ¶ 8); (iv) held a four-hour meeting during which she and Defendant "thoroughly reviewed each paragraph of the plea agreement," (*id.* ¶ 9); and, (v) met with Defendant for approximately one hour on the day Defendant reviewed and executed the Plea Agreement before the allocution. (*Id.*) **Defendant, according to Arango, "was highly involved, vocal, assertive, and [she] made no decisions without full consultation with him."** (*Id.* ¶ 5 (emphasis added).) Arango also contends that both she and the Government provided discovery materials to Defendant, and that she provided these in "hard copy," including "a large number of emails." (*Id.* ¶¶ 6–7.) Finally, Arango denies informing Defendant that he would face a 20-year sentence unless he pled guilty, and she denies that she "provided any legal advice regarding Netherlands immigration law." (*Id.* ¶¶ 7, 12–14.)[3]

The Government responded on December 6, 2022, contending that Defendant "has not met the 'stringent' standard for withdrawing his guilty plea" because each of the relevant factors "weighs heavily against allowing the defendant to withdraw his plea." (Gov't's Resp., dated Dec.

---

[3] Defendant filed a Reply on January 10, 2023. (*See* Def.'s Reply, dated Jan. 10, 2023 ("Def.'s Reply").) He states that "Arango only reviewed the plea agreement [with him] by phone [prior to] the day of the plea," (*id.* at 2); Defendant had not "reviewed each paragraph of the plea agreement," (*id.*); and Defendant "was never fully informed about the plea agreement." (*Id.* at 3.)

4

6, 2022 ("Gov't's Resp.") at 1 (citation omitted).) The Government contends, among other things, that Defendant "has not even attempted to assert his innocence in his Affidavit, let alone come forward with evidence that corroborates his innocence" and thus has not made "any factual allegations that undermine [his] sworn statements of guilt," (*id.* at 1, 12); Defendant "waited more than seven months after his guilty plea" to move to withdraw the plea, which, under Second Circuit law, "weigh[s] against claims of innocence, involuntariness," and withdrawal of his plea, (*id.* at 1, 13–14); withdrawal would prejudice the Government by "depriv[ing it] of the benefit of the bargain of the plea agreement" and requiring it "to expend significant time and resources" on an unexpected trial while witness memories "will likely have faded," (*id.* at 1, 14); withdrawal would deprive victims "of finality and recovery of restitution," (*id.* at 14); and Defendant "has not raised a significant question about the voluntariness of his plea," offering only "conclusory allegations which contradict [his] sworn statements" and "the express terms of his plea agreement." (*Id.* at 1.)

**For the reasons stated below, the Court denies Defendant's motion to withdraw his plea.**[4]

## II.  Legal Standard

"To determine whether the defendant has proffered a 'fair and just reason' to justify withdrawal," a district court considers, among other things: "(1) the amount of time that has elapsed between the plea and the [withdrawal] motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008); *see also* 11(d)(2)(B).

---

[4] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

Defendant "bears the burden of satisfying the trial judge that there are valid grounds for withdrawal." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (citations and quotation marks omitted).  Defendant's burden is "stringent" because "society has a strong interest in the finality of guilty pleas." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018).  Withdrawal of a plea "impairs the orderly administration of justice." (*Id.* (citation omitted)).

### III.  Analysis

Defendant has not satisfied his burden of demonstrating a fair and just reason to withdraw his guilty plea.  *See Doe*, 537 F.3d at 210.  Nor has he demonstrated any need for an evidentiary hearing.  *See Gonzalez*, 970 F.2d at 1100–01.  For one thing, seven months lapsed between Defendant's guilty plea on March 21, 2022 and his motion to withdraw the guilty plea filed on November 21, 2022.  (*See* 3/21/22 Tr.; Def.'s Mot.; *cf. United States v. Taylor*, 242 F.3d 369, 2000 WL 1786338, at *4 (2d Cir. 2000) (delay of five weeks between plea and withdrawal motion weighed against granting motion); *Doe*, 537 F.3d at 211; *United States v. Reyes-Gonzalez*, No. 18-CR-18 (ALC), 2021 WL 2651228, at *8 (S.D.N.Y. June 28, 2021).)

Second, to this very day, Defendant has not asserted a clear claim of legal innocence. Nowhere in Defendant's sworn affidavit does he even mention his innocence, nor does he assert that he is innocent in any of his other submissions.  This "cuts against allowing [a defendant] to withdraw his guilty plea." *Reyes-Gonzalez*, 2021 WL 2651228, at *8 (noting that "[n]owhere in his declaration does [defendant] claim he is innocent").  The closest the Defense comes to asserting Defendant's innocence is the following vague "suggestion:"

> By filing this motion we hope to emphasize the fact that the defendant has foregone his chance to go ahead with a sentence within the Guidelines making him eligible for immediate release. One must ask themselves under what scenario would a defendant desire to contest his plea that would, in essence, prevent him from

> leaving the courtroom on his sentencing date.  We suggest that his position in filing this motion speaks to his factual innocence.

(Def.'s Mot. at 11.)

Third, the Government persuasively contends it would be prejudiced if Defendant were to withdraw his plea, depriving the Government and victims "of the benefit of [the] bargain [of the Plea Agreement] by having the burden of trial preparation suddenly thrust upon" them.  (Gov't's Resp. at 14 (quoting *United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004)); *see also Doe*, 537 F.3d at 210–11.)

Nor has Defendant plausibly raised any "significant questions concerning the voluntariness or general validity of the plea" that would justify an evidentiary hearing.  *Doe*, 537 F.3d at 213 (citation omitted); *see also United States v. Torres*, 129 F. 3d 710, 715 (2d Cir. 1997) (where "the defendant's allegations merely contradict the record, are inherently incredible, or are simply conclusory") (citation and quotation marks omitted).

**Defendant's Own Words**

Equally significant, the principal assertions contained in Defendant's Motion are directly contradicted by Defendant's own unequivocal statements which he made in Court and under oath.  Here is a sampling of Defendant's representations made at his plea allocution: "Of my own volition, I agreed to conspire with others to engage in an advance fee fraud scheme with the intent to defraud.  We did exchange e-mails with the various parties and money was transferred from the parties and received by myself and others."  (3/21/22 Tr. at 16:8–12.)  The conspiracy occurred during the approximate period of "2010 to 2012" in "Manhattan."  (*Id.* at 16:13–16.)

Defendant's representations under oath also included the following:

> COURT:  Have you had a chance to discuss the charges in the superseding indictment . . . and how you wish to plead, with Ms. Arango?
> DEFENDANT:  I have.

COURT:  Has [counsel] told you the consequences of pleading guilty?
DEFENDANT:  She has.

COURT:  Do you understand the charge in Count One and the penalties that are associated with that charge?
DEFENDANT:  I do, your Honor.

COURT:  How do you wish to plead to Count One; guilty or not guilty?
DEFENDANT:  Guilty.

COURT:  [A]s part of your plea I understand that you are also agreeing to make restitution in the amount of $1,375,000 in accordance with federal law; is that correct?
DEFENDANT:  That is correct.

COURT:  Do you understand that you are bound by your guilty plea regardless of the immigration consequences of your plea and regardless of any advice you receive from your counsel or anyone else for that matter regarding those consequences?
DEFENDANT:  Yes, sir.

COURT:  Have you specifically discussed this subject—the immigration issue—with your counsel?
DEFENDANT:  Yes, sir.

COURT:  Do you understand that by entering a guilty plea here today you will be giving up all of the rights that I have just reviewed with you including your right to a trial, **that you will not be able to withdraw your guilty plea**, and the only remaining step in this case will be the sentencing?
DEFENDANT:  Yes, sir.

COURT:  Do you understand that even if you are surprised or disappointed by your sentence you will still be bound by your guity plea?
DEFENDANT:  Yes, sir.

COURT:  Knowing everything I have just reviewed with you, do you still wish to plead guilty to Count One of the indictment?
DEFENDANT:  I do.

COURT:  Now, I have before me a letter that is dated February 1st, 2022, from the government to Ms. Arango, containing a [P]lea [A]greement.  Have you read this letter?
DEFENDANT:  Yes, I have.

COURT:  Did you sign it on the last page?
DEFENDANT:  I did, sir.

> COURT:  Before you signed [the Plea Agreement] did you discuss it with your attorney?
> DEFENDANT:  I did.
>
> COURT:  **[I]s your plea voluntary?  And what I mean by that, is it made of your own free will?**
> DEFENDANT:  **Yes, sir.**

(*Id.* at 5:22–6:1, 6:8–10, 7:1–10, 8:3–11, 10:3–22, 11:2–10, 13:19–22 (all emphasis added).)

On March 29, 2022, following review of the transcript of Defendant's plea allocution, this Court "determined that the Defendant entered the guilty plea knowingly and voluntarily and that there was a sufficient factual basis for the guilty plea." (Order, dated March 29, 2022.) The Court accepted Defendant's guilty plea, ordered that each party file a "sentencing submission," and scheduled the sentencing for June 28, 2022. (*Id.*; *see also* Order, dated Apr. 27, 2022.)

Defendant's statements (cited above) made during a plea allocution in open court "carry a strong presumption of verity" and "are conclusive absent credible reason justifying departure from their apparent truth." *Gonzalez*, 970 F.2d at 1101 (citations and quotation marks omitted). At the same time, Defendant's "bald statements" in his motion that "simply contradict" what he said at his plea allocution are insufficient. *Torres*, 129 F. 3d at 715. Defense counsel Arango's Declaration is plausible and rings true. She declares that "on numerous occasions," she consulted with Defendant regarding "the charges against him . . . as set forth in the superseding indictment and complaint," as well as "potential defenses," (Arango Decl. ¶ 3); and that she "provided [him] with the discovery materials," including in "hard copy paper for ease of [his] review." (*Id.* ¶ 6.) Arango also declares, among other things, that she:

- met with Defendant in person for approximately three and a half hours and reviewed with him "hard paper copies" of charging documents and "a large number of emails provided in discovery." (*Id.* ¶ 7.)

- conferred with Defendant "several" times "regarding th[e] plea offer." (*Id.* ¶ 8)

9

- "corresponded in writing with [Defendant] and fully explained the impact of the Sentencing Guidelines on his potential sentence if he was convicted at trial compared to the proposed plea offer." (*Id.*)

- met with Defendant in person for approximately four hours and "thoroughly reviewed each paragraph of the plea agreement" with him. (*Id.* ¶ 9.)

- met with Defendant for (an additional hour) when he executed the Plea Agreement. (*Id.*)

- met with Defendant for approximately four hours and "thoroughly reviewed each paragraph of his Pre-Sentence Investigative Report including loss amounts for each of the victims and restitution." (*Id.* ¶ 10.)

**Defendant Offers No Proof of Counsel's Ineffectiveness**

Based upon the entire record, the Court finds, among other things, that Defendant has failed completely to show that: (1) "counsel's performance fell below an objective standard of reasonableness;" and/or (2) "there is a reasonable probability that were it not for counsel's errors [none have been shown], he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## IV.   Conclusion & Order

For the foregoing reasons, Defendant's motion [# 119] to withdraw his plea is denied. Sentencing is scheduled for April 4, 2023 at 10:00 am. Written submission from Defense is due by March 10, 2023; Government response is due by March 17, 2023.

Dated: February 24, 2023
      New York, NY

                                                *Richard M. Berman*
                                          _____
                                              RICHARD M. BERMAN
                                                    U.S.D.J.